# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| LYNDA FITZHUGH, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 1:04-CV-3258-RWS |
| v. | : | |
| | : | |
| CHARLES TOPETZES, et al. | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

This case comes before the Court on Defendants' Motion for Summary

Judgment [42].  After its review of the record, the Court enters the following

Order.

### Background

Plaintiff, an African-American woman, initiated this action in late

November 2004 alleging that she had been the victim of unlawful

discrimination and retaliation in her employment with the Georgia State House

of Representatives (the "House").[1]  Plaintiff states that she first began working

for the House in 1999 as a suite secretary, but received a promotion to

committee secretary in February 2003.  In this new role, she was given what she

describes as the "humongous task" of supporting eight incumbent legislators, as

well as five freshman legislators.  Plaintiff contends that the size of this task

went beyond that "normally" required of newly promoted committee

secretaries, and was greater than that of any white assistant she spoke to in the

House.

Faced with this burdensome workload, Plaintiff complained to her

supervisors about the perceived disparity in treatment, but states that she was

---

[1] Plaintiff's initial attorney was permitted to withdraw from representation after expressing his hope that Plaintiff would be able to obtain a lawyer "more to her liking and with whom she [could] better communicate and cooperate."  (See Mot. to Withdraw [35-1] at 1.)  Although Plaintiff is now represented by counsel, she was proceeding *pro se* at the time she filed her opposition to Defendants' Motion for Summary Judgment.

Although it may simply be that Plaintiff is a *pro se* litigant of exceptional skill, after reviewing her ostensible *pro se* filings, the Court has some concern that her papers were "ghost written" – that is, prepared by an undisclosed attorney who had Plaintiff sign the papers.  If that is indeed the case, the Court takes this opportunity to condemn the practice.  See, e.g., Duran v. Carris, 238 F.3d 1268, 1272 (10th Cir. 2001) (holding that "ghost writing" constituted a misrepresentation to the Court by the allegedly *pro se* litigant and the unidentified counsel); Somerset Pharm., Inc. v. Kimball, 168 F.R.D. 69, 72 (M.D. Fla. 1996) (explaining that "the practice of filing pro se pleadings which are actually prepared by a legal advocate does taint the legal process and create disparity between the parties").

admonished to "keep her mouth shut."  (Compl. ¶ 16.)  Plaintiff alleges that her

supervisors then began to harass her for "contrived employment infractions,"

docking her pay for each time she arrived late to work, and placing her on

administrative leave "for a few days."  (Id.)  She states that these disciplinary

actions, too, were inconsistent with, and more severe than, those received by her

white counterparts for similar workplace rule violations.

Plaintiff additionally states that her supervisors at the House began to

defame her by labeling her a troublemaker, difficult to work with, and

insubordinate, and did so without giving Plaintiff the opportunity to defend

herself.  Then, in December 2003, Plaintiff alleges that she was demoted to a

suite secretary position, which resulted in an atypical reduction in pay not

endured by white co-workers who had received similar demotions.  When her

supervisors then assigned her to another "suite," Plaintiff states that she

responded by inquiring about how she might contact the Georgia Commission

on Equal Opportunity.  Three days later, Plaintiff states that she was terminated.

She then initiated this lawsuit, asserting claims for violation of her rights under

the First Amendment, the Equal Protection Clause, 42 U.S.C. §§ 1981 and

1983, and Georgia common law.  Defendants have now moved for summary

judgment.

## Discussion

Federal Rule of Civil Procedure 56 requires that summary judgment be

granted "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  FED. R. CIV. P. 56(c).  "The moving party bears

'the initial responsibility of informing the . . . court of the basis for its motion,

and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact.' "

Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004)

(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.

2d 265 (1986) (internal quotations omitted)).  Where the moving party makes

such a showing, the burden shifts to the non-movant, who must go beyond the

pleadings and present affirmative evidence to show that a genuine issue of

material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257,

106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The applicable substantive law identifies which facts are material.  Id. at

248.  A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law.  Id.  An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

In resolving a motion for summary judgment, the court must view all

evidence and draw all reasonable inferences in the light most favorable to the

non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

Cir. 2002).  But, the court is bound only to draw those inferences which are

reasonable.  "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.

Ct. 1348, 89 L. Ed. 2d 538 (1986)).  "If the evidence is merely colorable, or is

not significantly probative, summary judgment may be granted."  Anderson,

477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at

5

586 (once the moving party has met its burden under Rule 56(c), the

nonmoving party "must do more than simply show there is some metaphysical

doubt as to the material facts").

With these standards as a foundation, the Court turns to address the

merits of Plaintiff's claims.

**A.      Preliminary Matters**

1.      <u>Abandoned claims.</u>

Plaintiff's pleading in this case (filed while she continued to be

represented by counsel) is not the paragon of clarity.  Indeed, several of the

pivotal allegations in her Complaint more closely resemble legal conclusions

than averments of fact.  Having said that, the issues before the Court are

substantially narrowed in light of Plaintiff's response to Defendants' Motion for

Summary Judgment (the "Motion").

Defendants' Motion is a comprehensive one.  They move on all claims

asserted in the Complaint.  Plaintiff's response, however, addresses only her

claims for disparate treatment under 42 U.S.C. § 1983,[2] retaliation, and

---

[2] Section 1983 is an enabling statute, and Plaintiff does not state a separate cause of action in alleging a Fourteenth Amendment violation.  In addition, it is well-established in this Circuit that § 1983 constitutes the exclusive remedy against state actors

intentional infliction of emotional distress.  She is consequently deemed to have abandoned the remaining claims.  See Kramer v. Gwinnett County, 306 F. Supp. 2d 1219, 1220 (N.D. Ga. 2004) (Evans, J.), aff'd 116 Fed. Appx. 253 (11th Cir. 2004) ("Having failed to respond to many of Defendants' arguments and having defended only his Section 1983 claim for deliberate indifference to a serious medical need, Plaintiff is found to have abandoned all other asserted claims.  Accordingly, the only claim remaining on summary judgment is Plaintiff's claim for constitutionally inadequate medical care."); Welch v. Delta Air Lines, Inc., 978 F. Supp. 1133, 1140 (N.D. Ga. 1997) (Hull, J.) (holding likewise).  What is more, this Court has reviewed the record and the authorities cited by Defendants in support of their Motion, and is satisfied that summary judgment is appropriate *vis-a-vis* these abandoned claims.  See FED. R. CIV. P. 56.  The Court will accordingly restrict its discussion to those claims Plaintiff has undertaken to defend in her responsive papers.

---

for violations of the rights contained in § 1981.  Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989); Butts v. County of Volusia, 222 F.3d 891, 893 (11th Cir. 2000) (holding that Civil Rights Act of 1991 did not legislatively overrule the interpretation of § 1981 contained in Jett).

7

2.     <u>Suit against Defendants in their official capacities.</u>

As Defendants correctly note, Plaintiff's claims seeking monetary recovery against them in their official capacities are not viable.  Under the Eleventh Amendment, a suit against state officials in their official capacities is typically considered a suit against the state, and is constitutionally barred.  <u>See Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 102, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984); <u>Schopler v. Bliss</u>, 903 F.2d 1373, 1379 n.4 (11th Cir. 1990) ("The Fourteenth Amendment does not by its own force override the States' Eleventh Amendment immunity . . . , nor did Congress abrogate that immunity when it enacted 42 U.S.C. § 1983 . . . ." ); <u>Thomas v. Ala. State Dep't of Mental Health and Mental Retardation</u>, No. 2:04-CV-1091, 2005 WL 1389875, at *3 (M.D. Ala. June 10, 2005) (dismissing § 1981 and § 1983 claims asserting race discrimination on Eleventh Amendment grounds); <u>Sasser v. Ala. Dep't of Corrections</u>, 373 F. Supp. 2d 1276, 1290 (M.D. Ala. 2005) (doing likewise); <u>Portera v. State of Ala. Dep't of Fin.</u>, 322 F. Supp. 2d 1285, 1294 (M.D. Ala. 2004) (same); <u>see also</u> <u>Powers v. CSX Transp., Inc.</u>, 105 F. Supp. 2d 1295, 1298-99 (S.D. Ala. 2000) (recognizing that states and state officials acting in their official capacities are not "persons" under § 1983, and

8

that Congress did not intend to abrogate the states' sovereign immunity in passing the statute).

     3.    <u>Qualified immunity.</u>

Defendants additionally raise the defense of qualified immunity.  In doing so, they do not appear to argue (and for good reason) that the prohibitions against racial discrimination and retaliation are not "clearly established" within the meaning of qualified immunity jurisprudence.  Rather, their position seems to be that Plaintiff has not established an underlying constitutional violation, and thus, there is no basis for individual liability.  <u>See</u> <u>Hope v. Pelzer</u>, 536 U.S. 730, 736, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002) ("The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation.").  Because the issue of a constitutional violation *vel non* requires analysis of the merits of Plaintiff's claims, it is to that question that the Court now turns.

**B.**    **Disparate Treatment**

While the legal predicates for liability relied on by Plaintiff in prosecuting her disparate treatment claims are several, the overarching framework for this Court's analysis is the familiar one articulated by the

AO 72A
(Rev.8/82)

Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  <u>See</u> <u>Richardson v. Leeds Police Dep't</u>, 71 F.3d 801, 806 (11th Cir. 1995) ("In a case such as this alleging disparate treatment, in which § 1983 is employed as a remedy for the same conduct attacked under Title VII, the elements of the two causes of action are the same.  [Cit.]  In both instances, the plaintiff must prove that the defendant acted with discriminatory intent.") (internal quotations omitted); <u>see also</u> <u>Lockridge v. Bd. of Trustees of Univ. of Ark.</u>, 315 F.3d 1005, 1009-10 (8th Cir. 2003) (employing <u>McDonnell Douglas</u> framework to analyze disparate treatment claims brought pursuant to § 1981 and the Equal Protection Clause); <u>English v. Colo. Dep't of Corr.</u>, 248 F.3d 1002, 1007 (10th Cir. 2001) (" 'While <u>McDonnell Douglas</u> involved a Title VII claim for failure to hire, the analytical framework it pioneered applies equally to claims brought pursuant to section 1981,' as well as to § 1983 claims based on allegations of racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment." (citations omitted)).  As recently explained by the Eleventh Circuit:

> Under the <u>McDonnell Douglas</u> framework, a plaintiff
> first must show an inference of discriminatory intent,
> and thus carries the initial burden of establishing a

> *prima facie* case of discrimination.  The plaintiff's
> successful assertion of a prima facie case "creates a
> rebuttable presumption that the employer unlawfully
> discriminated against her."  [Cit.]  Second, if the
> plaintiff successfully demonstrates a prima facie case,
> the burden then shifts to the employer to produce
> evidence that its action was taken for a legitimate,
> non-discriminatory reason.  [Cit.]  We proceed to the
> third step of the analysis once the employer meets its
> burden of production by proffering a legitimate,
> non-discriminatory reason, thereby rebutting the
> presumption of discrimination, and "[our] inquiry
> 'proceeds to a new level of specificity,' in which the
> plaintiff must show that the proffered reason really is
> a pretext for unlawful discrimination."  [Cit.]
> "Although the intermediate burdens of production
> shift back and forth, the ultimate burden of persuading
> the trier of fact that the employer intentionally
> discriminated against the employee remains at all
> times with the plaintiff."

Brooks v. County Comm'n of Jefferson County, Ala., 446 F.3d 1160, 1162

(11th Cir. 2006).  To establish a *prima facie* case of discrimination, Plaintiff

must demonstrate "[(1)] that she was a qualified member of a protected class

and [(2)] was subjected to an adverse employment action [(3)] in contrast with

similarly situated employees outside the protected class."  Embry v. Callahan

Eye Found. Hosp., 147 Fed. Appx. 819, 827-28 (11th Cir. 2005) (quoting

Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004)).

11

The parties agree that Plaintiff is a member of a protected class. Throughout her papers, moreover, Plaintiff identifies a number experiences to which she was subjected that she contends constitute "adverse employment actions."  These include: (i) requiring Plaintiff to support thirteen legislators after being promoted to committee secretary; (ii) docking her wages when she was late to work; (iii) placing her on administrative leave soon after she wrote a memo respecting "problems [she] was experiencing with the new administrative framework" (see Pl.'s Resp. to Defs.' Mot. for Summ. J. [44] at 16);[3] (iv) demoting her; (v) reducing her salary; (vi) subjecting her to training by an individual with less experience than she; (vii) frequently reassigning her; (viii) denying her a "flex schedule"; (ix) making repeated inquiries into her whereabouts, her work habits, and her attitude; (x) telling her, on one occasion, to "shut up, stop asking questions, and do your job"; (xi) accusing her of being insubordinate and unresponsive; (xii) denying her professional development training; (xiii) assigning her to a desk with no functional computer and providing her with no keys to the office; and (xiv) terminating her in an

---

[3]  Plaintiff alleges that this placement constitutes both disparate treatment and retaliation.

12

insensitive manner.[4]

    1.    <u>The majority of the incidents cited by the Plaintiff do not constitute "adverse employment actions."</u>

Not every unpleasantry associated with the workplace constitutes an "adverse employment action."  <u>Cf.</u> <u>Gupta v. Fla. Bd. of Regents</u>, 212 F.3d 571, 583 (11th Cir. 2000) ("Title VII, as it has been aptly observed, is not a 'general civility code.' ").  Rather,

> To establish an adverse employment action . . . "an employee must show a serious and material change in the terms, conditions, or privileges of employment," as viewed by a reasonable person in the circumstances.  [Cit.]  Although proof of direct economic consequences is not required in all cases, the asserted impact "cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment."

<u>Filius v. Potter</u>, 176 Fed. Appx. 8, 10 (11th Cir. 2006) (emphasis omitted).

What is more, "an action which, it turns out, had no effect on an employee is

---

[4] In her Complaint, Plaintiff states that "defendants terminated [her] employment *in retaliation* for seeking to file charges of discrimination . . . ." (<u>See</u> Compl. [5] at ¶ 29 (emphasis supplied).)  Likewise, in her responsive papers, Plaintiff does not appear to rely on the *fact* of her termination to sustain her disparate treatment claim.  She now protests, however, that the manner in which Defendants' effectuated her termination was insensitive, and that her white counterparts were not subject to the same degree of insensitivity.  (<u>See</u> Pl.'s Resp. to Defs.' Mot. for Summ. J. [44] at 21-22.)

13

not an 'adverse' action." Stavropoulos v. Firestone, 361 F.3d 610, 617 (11th Cir. 2004).

Although "[i]n determining whether an adverse employment action occurred, the cumulative effect of several individual actions may be considered[,]" Apodaca v. Sec. of Dep't of Homeland Sec., 161 Fed. Appx. 897, 900 (11th Cir. 2006), here, most of the events described by Plaintiff are simply far too trivial, viewed in isolation or in the aggregate, to give rise to liability.

First, Plaintiff's complaint that (i) she was forced to support a higher than normal number of representatives for a few weeks during the beginning of the 2003 legislative session does not constitute an adverse employment action.  In all but the most extraordinary of cases, "increased workloads are not adverse employment actions but rather an ordinary tribulation of the workplace for which employees should expect to take responsibility." McGuire v. Miami-Dade County, 418 F. Supp. 2d 1354, 1360 (S.D. Fla. 2006) (internal quotations omitted); accord Simmons v. Mobile Infirmary Med. Ctr., 391 F. Supp. 2d 1124, 1135 (S.D. Ala. 2005) ("alleged increase in [plaintiff's] workload" held not an adverse employment action); MacLean v. City of St. Petersburg, 194 F.

14

Supp. 2d 1290, 1299 (M.D. Fla. 2002) ("the Court finds that the additional

workload placed on Plaintiff was not an adverse employment action"); Geer v.

Macro Warehousing, Inc., 179 F. Supp. 2d 1332, 1341 (M.D. Ala. 2001) ("the

threshold for Title VII must involve employment action that does more than

further strain an employee's workload").  "The Eleventh Circuit has recognized

that . . . 'work assignment claims strike at the very heart of an employer's

business judgment,' and therefore, it would be 'unusual' for a change in work

assignments to be so 'substantial and material that it does indeed alter the terms,

conditions or privileges of employment.' "  Wehunt v. R.W. Page Corp., 352 F.

Supp. 2d 1342, 1353 (M.D. Ga. 2004) (quoting Davis v. Town of Lake Park,

245 F.3d 1232, 1244-45 (11th Cir. 2001)).

        Her complaint that (iii) she was placed on administrative leave after

authoring a memorandum expressing "problems [she] was experiencing with

the new administrative framework" is likewise inadequate to sustain a disparate

treatment claim.  (See Pl.'s Resp. to Defs.' Mot. for Summ. J. [44] at 16.)

Plaintiff admits that she received pay during her relatively short leave.  Aside

from her conclusory and unsupported judgment that "Defendants cannot

contend that my being placed on administrative leave had no bearing on my

15

subsequent termination a few short months later[,]" moreover, she fails to demonstrate any way in which that leave materially affected her employment. (See Pl.'s Resp. to Defs.' Mot. for Summ. J. [44] at 18.)  Courts within this Circuit have frequently found that such paid leaves of short duration fall markedly short of actionable adverse employment actions.  See, e.g., Moore v. Miami-Dade County, No. 02-33421, 2005 WL 3273722, at *11 (S.D. Fla. Sept. 30, 2005) ("The courts have specifically held that a suspension with pay for a short period of time is not an adverse employment action.") (collecting cases); cf Drago v. Jenne, 453 F.3d 1301, 1307 (11th Cir. 2006) (holding requirement that plaintiff take additional paid leave was not an "adverse employment action") (interpreting FMLA).

The same is true of Plaintiff's allegation that she was (vi) subject to training by an individual with less experience than she.[5]  While the disparity in experience between Plaintiff and the individual from whom she received "training" might have proven awkward for Plaintiff, it does not represent the

---

[5] Defendants point out that this is an inaccurate characterization of what actually transpired.  The record suggests that the less experienced individual from whom Plaintiff received "training" was simply a departing secretary Plaintiff was asked to replace. Plaintiff was instructed to accompany the secretary for the remaining week or two of the latter's tenure to prepare Plaintiff to assume the departing secretary's responsibilities.

AO 72A
(Rev.8/82)

sort of serious and material change in the terms and conditions of her employment that would give rise to liability.  See <u>Harris v. Equifax, Inc.</u>, No. 1:04-CV-2194, 2006 WL 819757, at *7 (N.D. Ga. Mar. 23, 2006) (Moye, J.) ("a change in supervision does not constitute a demotion or a 'significant' change in employment status sufficient to create a prima facie case of age discrimination").

Likewise, insofar as they are unaccompanied by demotion or reductions in pay, Plaintiff's (vii) reassignments among different offices do not establish the existence of an adverse employment action.  "A purely lateral transfer, that is a transfer which does not involve a demotion in form or substance, does not rise to the level of an adverse employment action." <u>Otu v. Papa John's USA, Inc.</u>, 400 F. Supp. 2d 1315, 1333 (N.D. Ga. 2005); <u>see also</u> <u>Benefield v. Fulton County</u>, 130 Fed. Appx. 308, 313 (11th Cir. 2005) ("To the extent [plaintiff] is asserting that her lateral transfer to a fire station . . . constituted [an] 'adverse employment action[ ],' th[at] action[ ] constituted [a] change[ ] in work assignments, instead of [an] adverse employment action[ ].").

A considerable number of courts have also considered, and rejected, the argument that (viii) being denied a "flex schedule" (here, the ability to come

17

into work fifteen minutes late and "make up" those fifteen minutes at other times of the day) constitutes an "adverse employment action."  See, e.g., O'Neal v. City of Chicago, 392 F.3d 909, 912 (7th Cir. 2004) (holding that plaintiff's "complaints about . . . losing a flexible work schedule and the ability to have weekends and holidays off . . . fall[s] short of an adverse employment action"); Nasis-Parsons v. Wayne, No. 4:05CV36, 2006 WL 1555913, at *8 (E.D. Va. June 1, 2006) ("The Court [finds] that limiting, or ending, Plaintiff's privilege to participate in the 'maxiflex' alternative work schedule . . . was not an adverse employment action."); Daniels v. Fed. Reserve Bank of Chicago, No. 98 C 1186, 2006 WL 861969, at *12 (N.D. Ill. Mar. 31, 2006) (plaintiff's assertion that she "was not permitted to work flex time and alternative work schedules . . .fail[ed] to allege an adverse employment action"); Glenn v. Williams, No. Civ. A. 98-1278, 2006 WL 401816, at *29 (D.D.C. Feb. 21, 2006) ("[W]ith respect to [plaintiff's] flex time claim, it is clear that in the absence of any particular vulnerability on the part of a plaintiff, the denial of flex time or changes in the normal work schedule will not constitute an adverse action.");  cf. Harbucks v. Teets, 152 Fed. Appx. 846 (11th Cir. 2005) (stating that it was not an adverse employment action to deny employee flex time, noting that there, the employee

18

had never requested such time); Warner-Stanton v. Blue Cross & Blue Shield of Ga., Inc., No. 4:04-CV-83, 2006 WL 42145, at *4 n.4 (M.D. Ga. Jan. 6, 2006) (stating that "[t]here is a strong argument that [being denied flex time] do[es] not rise to the level of [an] adverse employment action[ ]"); Daniel v. Spectrum Stores, Inc., 381 F. Supp. 2d 1368, 1377 n.7 (M.D. Ga. 2005) ("the schedule change does not constitute an adverse employment action to support a prima facie case of disparate treatment because it is not a serious and material change in the terms, conditions, or privileges of his employment"); Burnette v. Northside Hosp., 342 F. Supp. 2d 1128, 1138 (N.D. Ga. 2004) (Duffey, J.) (impact on child-care expenses and conflict with pick-up and drop-off schedule at school did not render transfer an adverse employment action).  The Court agrees with these authorities, at least on the facts presented here, and holds that the denial of Plaintiff's request for "flex time" does not constitute an adverse employment action.

Turning to Plaintiff's assertions that her supervisors (ix) made frequent inquiries into her whereabouts, her work habits, and her attitude, (x) told her, on one occasion, to "shut up, stop asking questions, and do your job," and (xi) accused her of being insubordinate and unresponsive, the Court is likewise

19

unpersuaded that these aspects of her employment are actionable under

applicable law.  As this Court has previously held, "increased supervision

cannot reasonably be considered 'adverse.' "  <u>Rapson v. Dev. Auth. of</u>

<u>Peachtree City</u>, No. 3:02-CV-7, 2004 WL 1944846, at *6 (N.D. Ga. Mar. 31,

2004) (Camp, J.); <u>see</u> <u>Harbuck</u>, 152 Fed. Appx. at 848 (heightened scrutiny of

plaintiff not an "adverse employment action").  Moreover, the reprimands

Plaintiff allegedly received from her supervisors, while indeed unpleasant, are

of the sort routinely found to fall short of the "serious and material" threshold

necessary to be considered adverse employment actions (or, for that matter,

conduct sufficient to sustain a hostile work environment claim).  <u>Summerlin v.</u>

<u>M & H Valve Co.</u>, 167 Fed. Appx. 93, 97 (11th Cir. 2006) ("The reprimand of

an employee does not constitute an adverse employment action when the

employee suffers no tangible harm as a result."); <u>Walker v. Golden Pantry Food</u>

<u>Stores, Inc.</u>, No. 3:04-CV-91, 2005 WL 3179988, at *7-*8 (M.D. Ga. 2005)

(analogous reprimands and comments held insufficient to constitute an adverse

employment action).

A similar result obtains in connection with Plaintiff's assertion that (xii)

she was denied "professional development" training.  Other than identifying the

fact that she was denied such training, Plaintiff fails to state how, or even if, that denial affected her salary, title, position, or job duties.  The denial of training, without more, does not constitute an adverse employment action.  See Tatroe v. Cobb County, No. 1:04-CV-1074, 2006 WL 559437, at *7 (N.D. Ga. Mar. 7, 2006) (Duffey, J.) (so holding); Sanders v. City of Montgomery, 319 F. Supp. 2d 1296, 1315 n.16 (M.D. Ala. 2004) ("Based on the evidentiary record before the Court, the Court is not persuaded that the denial of training . . . constituted an adverse employment action in and of itself."); Dinkins v. Charoen Pokphand USA, Inc., 133 F. Supp. 2d 1254, 1264 (M.D. Ala. 2001) ("a denial of job training . . . , standing alone, is an intangible action").

Similarly, the Court is unconvinced that Plaintiff's (xiii) temporary assignment to a work station with no functional computer, and Defendants' failure to provide her with keys to that office, rise to the level of adverse employment actions.  The undisputed evidence before the Court reflects that the assignment lasted only one or two weeks–just so long as the secretary whom Plaintiff would be replacing finished out her tenure with the Georgia Legislature.  That temporary deprivation of a working computer or keys during what Plaintiff describes as her "training" period does not, in the view of this

21

Court, amount to the sort of "serious and material change" in the conditions of employment necessary to sustain Defendants' liability under applicable law.

Finally, Plaintiff's assertion that she was terminated in an insensitive manner does not, in the view of the Court, constitute an adverse employment action.[6] Plaintiff contends that she was terminated over the phone while she was out on sick leave, and was provided with no explanation for her termination and given no grievance hearing.  Defendants' actions in this regard might have caused Plaintiff justifiable frustration, and, arguably, fail to comport with ideal standards of professionalism and tact.  The unpleasantness of the situation, however, still falls markedly shy of the workplace conditions the courts of this Circuit have been willing to recognize as potentially giving rise to employer liability.

In light of the foregoing, the Court focuses its attention on the three events described by Plaintiff that indeed constitute adverse employment actions: (ii) the reductions of her compensation based on tardiness; (iv) her demotion; and (v) the reduction of her salary upon her demotion.

_____

[6] As explained *supra*, note 4, Plaintiff does not appear to rely on the *fact* of her termination as an adverse employment action supporting her disparate treatment claim, but rather, the manner in which that termination was effected.

22

2.    <u>Reduction in pay based on tardiness.</u>

Plaintiff complains that her pay was reduced in response to her tardiness, while that of other workers was not similarly reduced.  Plainly, reduction in pay is an adverse employment action.  Plaintiff, nevertheless, fails to make out a *prima facie* case of discrimination because she has not shown a disparity in treatment "with similarly situated employees outside the protected class." <u>Embry</u>, 147 Fed. Appx. at 827-28.  As the Eleventh Circuit recently reiterated,

> When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, we evaluate "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."  [Cit.]  When making that determination, "[w]e require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."

<u>Burke-Fowler v. Orange County, Fla.</u>, 447 F.3d 1319, 1323 (11th Cir. 2006).

Here, Plaintiff failed to meet her burden of showing such identity.  While she alleges that other employees were permitted to come in late to work without suffering a reduction in pay, she has pointed to no other employee who was tardy with the same frequency as herself.  (<u>See</u> Defs.' Mem. in Supp. of Mot.

23

for Summ. J. [42] at 18.)  In the absence of any evidence that a non-African-American employee with similarly chronic tardiness enjoyed no diminution in pay, Plaintiff has failed to make out a *prima facie* case of discrimination.

3.    Demotion

Plaintiff next complains that she was reassigned at the request of Representative Carolyn Hugley, who, incidentally, is also an African-American female.  This assignment effectively resulted in Plaintiff's "demotion," because at the time of Representative Hugley's request, there were no other committee secretary positions available, and Plaintiff was placed in a suite secretary position.

The Court concludes that Plaintiff has no viable claim *vis-a-vis* this reassignment.  As an initial matter, it is the view of the Court that Plaintiff has failed to make out a *prima facie* case of discrimination.  Her replacement, Yunice Emir, was also an African-American female.  "Ordinarily, a plaintiff relying on circumstantial evidence will be unable to establish a prima facie case of race discrimination when the employer replaced [her] with a person of the same race."  Etienne v. Muvico Theaters, Inc., No. 01-6265-Civ, 2003 WL 21184268, at *9 (S.D. Fla. Mar. 11, 2003).  To be sure, that rule is hardly

absolute.  See id.; see also Wright v. Southland Corp., 187 F.3d 1287, 1292

(11th Cir. 1999) (envisioning hypothetical where claimant could establish

discrimination notwithstanding failure to show that replacement was of same

race);[7] Paldano v. Althin Med., Inc., 974 F. Supp. 1441, 1446 (S.D. Fla. 1996)

(explaining that, while a claimant must typically make out a *prima facie* case by

showing "that he was replaced by someone outside the protected class[,]"  "[a]

plaintiff may establish a prima facie case of discriminatory termination . . .

despite the fact that the employer hired a minority to fill the vacancy left by the

plaintiff.  [Cit.]  In such a situation, courts will consider such factors as the

length of time between the plaintiff's discharge and the hiring of his

replacement, and whether the replacement by the hired minority occurred after

the filing of a plaintiff's EEOC charge."); Howell v. Levi Strauss & Co., 840 F.

---

[7] The scenario put forward by the Eleventh Circuit went as follows:

> [I]magine a situation in which a racist personnel manager for a corporation fires an employee because he is African American.  Shortly thereafter, the racist personnel manager is replaced, and the previously terminated employee is replaced by another African American.  Under these circumstances, the first individual would have been a victim of illegal discrimination, despite the fact that his replacement was of the same race.

Wright, 187 F.3d at 1292.

Supp. 132, 135 (M.D. Fla. 1994) (recognizing that, in "certain situations[,] a plaintiff can establish a prima facie case under Title VII even when the discharged employee is replaced by someone of the same race"). A claimant may, relying on other indicia of discrimination or evidence of intervening influences, "present[ ] evidence from which the trier of fact could conclude, more probably than not, that the defendant-employer took an adverse employment action against the plaintiff on the basis of a protected personal characteristic." Wright, 187 F.3d at 1289 (describing "traditional framework" for analyzing discrimination cases). But here, such evidence is altogether lacking. Regardless of whether the Court applies McDonnell Douglas or some other formulation of the *prima facie* inquiry, it finds nothing to suggest that Representative Hugley's decision to request Plaintiff's reassignment was motivated by race.

For many of the same reasons, even if Plaintiff were held to have established a *prima facie* case, the Court would be forced to conclude that she had failed in her ultimate burden of presenting facts sufficient to permit a reasonable juror to draw an inference of discriminatory motive *vis-a-vis* her reassignment. Even as Plaintiff recites the events leading up to Representative

26

Hugley's request, the Court discerns no suggestion of discrimination based on race.  Indeed, Plaintiff does not appear to contest that it was Representative Hugley's request that resulted in her reassignment, and she does not appear to attribute any racial animus or motivation to the Representative.  The Court accordingly finds summary judgment appropriate *vis-a-vis* Plaintiff's demotion claim as well.

    4.    <u>Reduction in pay.</u>

The final adverse employment action the Court must consider is the reduction in pay Plaintiff suffered following her demotion.  Plaintiff alleges that she was deprived of her committee secretary pay supplement when she was demoted from committee secretary to suite secretary.  While Defendants maintain that such a reduction was a necessary consequence of Plaintiff's demotion (identifying two African-American employees and one white employee who were subjected to similar reductions), Plaintiff has purported to identify two other, white secretaries whose pay was not affected despite similar reclassifications.[8]

_____

    [8] Plaintiff does not state the basis for her knowledge of these events.  In her deposition, however, she did not qualify her responses in any way so as to suggest that her representations were based on anything other than her personal knowledge, and the

In light of the foregoing, it is clear that Plaintiff has made out a *prima facie* case of discrimination.  It is equally clear that Defendants, by explaining that it was the policy of the Legislature to reduce the pay of demoted individuals, has articulated a legitimate non-discriminatory reason for their actions.[9]  The question, then, is whether Plaintiff has presented sufficient evidence such that a reasonable juror would be permitted to conclude that the articulated reason is merely a pretext for unlawful discrimination–that is, that it was Plaintiff's race that motivated the decision to reduce her salary.  That question, in all candor, is a close one.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (explaining that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," but cautioning that such a showing may not always be sufficient to sustain a finding of discrimination).

---

Court is forced to assume, for present purposes, that that is indeed the case.

[9] It is unclear from the record who the ultimate decision-maker was *vis-a-vis* the challenged salary reduction.  No Defendant disclaims involvement in the decision, however, and this issue will be left for resolution at trial.

As part of her *prima facie* case, Plaintiff demonstrated that the Legislature's policy of reducing employee salaries upon demotion was inconsistently applied.  Inconsistent application of a workplace policy, while not necessarily sufficient to sustain a claimant's burden (even at the summary judgment stage), may constitute circumstantial evidence of discrimination and, in the appropriate case, give rise to a triable issue of fact.  Compare Ash v. Tyson Foods, Inc., 129 Fed. Appx. 529, 533 (11th Cir. 2005), rev'd on other grounds, – U.S. –, 126 S. Ct. 1195, 163 L. Ed. 2d 1053 (2006) ("we have also observed that deviation from company policy can be circumstantial evidence of discrimination, especially where the rules were bent or broken to give a non-minority applicant an advantage"); Berg v. Fla. Dep't of Labor and Employment Sec., Div. of Vocational Rehab., 163 F.3d 1251, 1255 (11th Cir. 1998) (suggesting that failure to adhere to or inconsistent application of policies may be circumstantial evidence of discrimination); Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 51 (2d Cir. 1998) ("The evidence of Hilton's inconsistent application of its disciplinary policy was sufficient for the jury to have decided properly that the employer's defense was simply a pretext for discrimination, and thereby find for the plaintiff."); Trent v. Valley Elec. Ass'n, Inc., 111 F.3d

29

138, 1997 WL 191479, *4 (9th Cir. Apr. 18, 1997) (unpublished table decision) ("Pretext can be shown by the inconsistent application of employer policy . . . ."); Thomas v. Dade County Public Health Trust, 177 F. Supp. 2d 1283, 1292 (S.D. Fla. 2001) ("The inconsistent application of an employer's policies can be circumstantial evidence of discrimination."), with Leeny v. Clark County, 21 Fed. Appx. 667, 669 (9th Cir. 2001) (inconsistent enforcement of policy held insufficient to create genuine issue); Sheppard v. Sears, Roebuck & Co., 391 F. Supp. 2d 1168, 1181 (S.D. Fla. 2005) ("One of the indirect ways a plaintiff may show pretext is by providing evidence of deviation from company policy as circumstantial evidence of discrimination, especially where the rules were bent or broken to give a non-minority applicant an advantage.  [Cits.]  However, demonstrating deviation from company policy alone is not sufficient . . . ."); Probus v. Charter Commc'ns, LLC, No. 3:04-CV-582, 2006 WL 1737947, at *4 (W.D. Ky. June 21, 2006) (granting employer's motion for summary judgment on race discrimination claim notwithstanding evidence of inconsistently applied policy).

Faced with nothing more than evidence of inconsistent application of a compensation policy, this Court would be inclined to hold Plaintiff's showing

30

insufficient to survive summary judgment.  But, the record before the Court,

viewed in the light most favorable to Plaintiff, paints a slightly more

inculpatory picture.  Defendants have identified three African-American women

(including Plaintiff) and one white woman whose pay was reduced upon their

demotion.  (See Thurman Aff. [42] ¶ 16.)  Plaintiff, in response, has pointed to

two white women whose pay was not so affected.  (See Pl.'s Dep. [42] at 146-

47.)  Drawing all inferences in Plaintiff's favor, a reasonable juror could find

that Plaintiff fell victim to an employer practice whereby demoted white

employees were often permitted to retain their higher rate of compensation,

while African-American workers were invariably subject to a decrease in pay.

While the amount of compensation Plaintiff might recover as a consequence of

proving such discrimination here is indeed very small, the possibility of such a

finding precludes summary judgment *vis-a-vis* this claim.

## C.       Retaliation

Plaintiff additionally brings a claim for retaliation pursuant to 42 U.S.C.

§ 1981.  There is no question that such a claim is cognizable in this Circuit, "but

the elements of a claim for retaliation under § 1981 are not settled."  Tucker v.

Talladega City Sch., 171 Fed. Appx. 289, 294 (11th Cir. 2006); see also

31

Andrews v. Lakeshore Rehab. Hosp., 140 F.3d 1405, 1411-13 (11th Cir. 1998) (recognizing viability of claim).  On occasion, courts have relied on the framework employed under Title VII to evaluate the merits of a claimant's charge of retaliation.  Tucker, 171 Fed. Appx. at 294 (collecting cases).  The Eleventh Circuit, however, continues to express some degree of equivocation in bringing Title VII's standards to bear on an action brought pursuant to § 1981. Id. at 296.

This Court need not enter this area of uncertainty, nor need it determine what impact Burlington Northern & Santa Fe Railway Co. v. White, – U.S. –, 126 S. Ct. 2405, – L. Ed. 2d – (2006), has on the analysis of § 1981 retaliation claims.  This is because Plaintiff has failed to present evidence of the most fundamental threshold for success on a § 1981 retaliation claim–a complaint to her employer respecting *race-based* discrimination.  See Tucker, 171 Fed. Appx. at 294-96; Andrews, 140 F.3d at 1411-13; Pinkard v. Pullman-Standard, 678 F.2d 1211, 1229 n.15 (5th Cir. Unit B 1982) (holding that § 1981 claims "may be based upon retaliatory action taken against an employee for the

AO 72A
(Rev.8/82)

employee's lawful advocacy of the rights of racial minorities").[10]  As recounted

by Plaintiff in her response brief, the grievances she voiced to her employer

were in the nature of personal complaints respecting her experiences with

*personal* animus, being "singled out" for unfair treatment, and "discrimination"

against her as an individual (*e.g.*, "problems [she] was experiencing with the

new administrative framework"), rather than complaints targeting race-based

animus or disparate treatment.   (See Pl.'s Resp. to Defs.' Mot. for Summ. J.

[44] at 16; see also Thurman Aff. ¶ 23 ("Plaintiff never complained to me that

she was being discriminated against on the basis of her race."); Topetzes Aff. ¶

4 (same); Harrison Aff. ¶ 7 (same); Buckner Aff. ¶ 3 (same).)  Indeed, at her

deposition, Plaintiff admitted:

> Q:     Did you ever report race discrimination while
>        you were employed by the Legislature?

---

[10] Although Plaintiff alleges in her Complaint that she was terminated shortly after asking Defendant Thurman how to go about filing a complaint with the Georgia Commission on Equal Opportunity (see Compl. [5] at ¶ 54), she fails to mention that allegation in her responsive brief, and directs the Court to no proof substantiating that allegation.  See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); Powers v. CSX Transp., Inc., 190 F. Supp. 2d 1284, 1286 n.2 (S.D. Ala. 2002) (explaining that it is not the obligation of the Court to comb the record to locate evidence in support of claimant's position).

A:    I reported discrimination.

Q:    Did you report race discrimination specifically.

A:    *No.  I reported discrimination.*

(Pl. Dep. at 143:11-16 (emphasis supplied).)

In light of the foregoing, Plaintiff has not demonstrated the sort of activity to which § 1981 extends its protection.  See Jeronimus v. Polk County Opportunity Council, Inc., 145 Fed. Appx. 319, 326 (11th Cir. 2005) (similar complaints held not protected activity under Title VII).  Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

**D.    Intentional Infliction of Emotional Distress**

Finally, Plaintiff asserts a cause of action for intentional infliction of emotional distress.  Defendants argue that the events Plaintiff describes in her pleading are simply not "outrageous" enough to support such a claim.  The Court agrees.

To succeed on a claim of intentional infliction of emotional distress under Georgia law, a claimant must prove: "(1) intentional or reckless conduct (2) which is extreme and outrageous and (3) caused the emotional distress (4)

34

which is severe." <u>Lewis v. Northside Hosp.</u>, 599 S.E.2d 267, 270 (Ga. Ct. App.

2004) (quoting <u>Pyle v. City of Cedartown</u>, 524 S.E.2d 7 (Ga. Ct. App. 1999)).

> The conduct complained of in support of a claim for
> intentional infliction of emotional distress must be
> extreme and outrageous.  Generally, the case is one in
> which the recitation of the facts to an average member
> of the community would arouse his resentment against
> the actor, and leave him to exclaim 'Outrageous!'
> Whether a claim rises to the requisite level of
> outrageousness  and egregiousness to sustain a claim
> for intentional infliction of emotional distress is a
> question of law.

<u>Id.</u> at 270-71.

In the instant case, Plaintiff depicts her workplace as highly unpleasant,

and the events she describes appear to have impacted her in a significant way.

That said, the conduct she describes is simply not severe enough to meet the

high threshold of outrageousness necessary to sustain a claim for intentional

infliction of emotional distress under Georgia law.  Far more egregious conduct

has been held by the Georgia courts insufficient to state such a claim.  <u>See</u>

<u>generally</u> <u>Jarrard v. United Parcel Serv., Inc.</u>, 529 S.E.2d 144, 146-48 (Ga. Ct.

App. 2000).

35

AO 72A
(Rev.8/82)

## Conclusion

Defendants' Motion for Summary Judgment [42] is **GRANTED in part and DENIED in part**.  It is denied only as to Plaintiff's claim that she was the victim of disparate treatment based on a reduction of pay at the time of her demotion.  It is granted in all other respects.

The Court hereby **ORDERS** that the above-styled action be submitted to non-binding mediation.  The Court refers the matter to Chief Magistrate Judge Gerrilyn G. Brill for the selection of a Magistrate Judge as mediator.  This action will be stayed pending mediation.

The parties are **DIRECTED**, promptly upon the selection of the mediator, to provide proposed dates to the mediator to facilitate scheduling the mediation conference.  The mediation shall occur not later than the thirty day period specified in the Local Rules, see LR 16.7F(4) ("Once appointed, the ADR neutral will arrange for a conference at a time within thirty (30) days from the date of the notice naming the ADR neutral, unless otherwise ordered by the judge."), and one party from both sides, in addition to counsel, if retained, shall be required to attend.  A failure to attend mediation may result in sanctions, up to and including dismissal and/or the striking of Defendants' Answer.

AO 72A
(Rev.8/82)

The stay imposed by the Court shall be lifted upon the earlier of (i) the conclusion of that thirty day period, or (ii) the filing of a Notice, signed by a party or their representative, that mediation has concluded, either with or without the achievement of settlement.

In the event mediation concludes without achieving settlement, the parties are **DIRECTED**, within thirty (30) days thereafter, to submit their consolidated pretrial order.  See LR 16.4A, NDGa.

**SO ORDERED** this  1st  day of September, 2006.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)